NAVIN *v*. THE NEW COLONIAL HOTEL, INC., ET AL.

[No. 28,644. Filed February 8, 1950.]

*Symmes, Fleming & Symmes; Frank A. Symmes, Charles W. Symmes* and *Owen S. Boling,* all of Indianapolis; and *Arthur C. McGaughey,* of Crawfordsville, for appellant.

*Edward H. Knight, Adolph G. Emhardt,* both of Indianapolis; and *Harding & Harding,* of Crawfordsville, for appellees.

STARR, J.—The appellee, The New Colonial Hotel, Inc., started this action against the appellant in the Marion Superior Court. The complaint is in two paragraphs: Paragraph one is for specific performance of a written contract for the purchase and sale of certain

hotel property including the real estate and hotel equipment; paragraph two is for damages for breach of this contract. From a finding and judgment in favor of the appellee corporation for specific performance and against the appellant, this appeal is prosecuted.

The substantial allegations of each paragraph of the complaint are as follows: That the appellant, Clara B. Navin, is the owner of said real estate located in the City of Indianapolis known as 220 South Illinois Street, in which she operates a hotel under the name and style of "Colonial Hotel"; that she listed the hotel for sale with one Paul Williams, a real estate broker in said city, who, on April 3, 1945, found a buyer therefor in the person of appellee, William P. Fuller, who thereupon made the following offer:

"PROPOSITION

Indianapolis, Ind. April 3, 1945

"———— hereby agree to purchase from the owner through you as his broker the property known as COLONIAL HOTEL . . . (Building & Furnishings) . . . located at 220 S. Illinois Street, Indianapolis, Indiana. Located in the City of Indianapolis, Marion County, Indiana. I (we) hereby further agree to pay for said property the sum of sixty thousand & no/100 ($60,000.00) Dollars upon the following terms, viz.: Eighteen thousand ($18,000.00) Dollars cash to be paid upon the delivery of a (Indianapolis Real Estate Board) contract deed, the remainder of the purchase money to be paid as follows: Five hundred ($500.00) dollars per month. Interest at the rate of 5% computed monthly.

"Purchase price to include all furnishings, equipment and going hotel business. The name COLONIAL and good will.

"I am (we are) to have complete possession. Possession within 30 days from date.

"Rents, interest and premiums of insurance to be prorated to Closing of deal. I (we) will assume

and agree to pay all instalments of taxes on said real estate beginning with the instalment due and payable May 1946, and all instalments subsequent thereto; also all assessments for municipal improvements which become a lien after this date. Also ——

"That I am (we are) to be furnished free of charge———a complete abstract of title to date as quickly as the same can be prepared, said abstract to show a merchantable or insurable title to said real estate in the name of the grantors who will sign the deed conveying said real estate, free and clear of all liens and encumbrances except as stated herein and restrictions of record, if any. This transaction is to be closed within Ten days after said abstract showing merchantable title or policy of title insurance is delivered.

"This offer is void if not accepted in writing on or before 12:00 o'clock noon on the 4 day of April, 1945.

"It is also agreed that this purchase includes electrical or gas fixtures, window shades, linoleum, screens and awnings which may belong to above property that are on the premises or elsewhere.

"It is expressly agreed that all terms and conditions are included herein and no verbal agreements of any kind shall be binding or recognized.

"I (we) deposit herewith Two hundred dollars ($200.00) Dollars as earnest money to apply upon the cash payment provided herein with the understanding that said deposit shall be returned to us promptly in the event this proposition is not accepted.

"(signed) W. P. Fuller"

This written offer was accepted in writing by the appellant which written acceptance is in words as follows:

"As the owner of the property described herein I hereby accept this proposition this 3 day of April, 1945, and I agree to pay to Paul Williams, broker, the sum of Three thousand and no/100 ($3,000.00) Dollars (which is the regular Indian-

apolis Real Estate Board commission) for his services rendered in this transaction.

"(Signed) Clara B. Navin"

That on May 3, 1945, Fuller assigned in writing his interest in this contract to the appellee, The New Colonial Hotel, Inc., a corporation; that this company was organized by the said appellee Fuller "for the express and sole purpose of performing the terms of said proposition as agreed to be performed by the said W. P. Fuller, and of executing said proposed conditional sales contract, and of operating said hotel building on said premises; all of which the defendant had at all times had full notice." That in due course the said corporation tendered to the appellant the sum of $18,000 and demanded that she execute a conditional sales contract to it in accordance with said proposition. That appellant refused said tender and refused to execute the contract. Paragraph one of the complaint closes with the prayer that specific performance be awarded. Paragraph two further alleges damages for breach of contract and prays for a money judgment.

The appellant addressed her demurrer to each paragraph of this complaint. One of the grounds for demurrer was that neither of said paragraphs stated facts sufficient to constitute a cause of action. The memorandum attached to the demurrer sets out, among other reasons, why each paragraph is insufficient; that each paragraph discloses that the rights arising out of the contract involve the personal liability assumed by Fuller in the original contract, and this liability cannot be transferred to another without the consent of the appellant; also, that there was a failure to allege what the form of the Indianapolis Real Estate Board provides. We will not discuss whether this omission was fatal as to either paragraph as we have de-

termined to decide this appeal on the objection first above set out.

While this demurrer was pending, appellee Fuller was made a party defendant. During the trial the appellee, Rufus M. Dodrill, was also made a party defendant. Each of these new parties was made a defendant on motion of the appellee corporation to answer as to any interest he might claim in the contract.

It was taken for granted and not questioned by the parties to this appeal, that this offer as accepted, constituted a binding contract *in praesenti* notwithstanding it contemplated another more formal document. By this contract Fuller bound himself to sign and execute the final draft of the contract upon the approved form of the Real Estate Board; this remained to be done. It would appear to us that this contract called for the personal obligation of Fuller. This final draft would personally bind him to pay the balance of the purchase price and all special assessments subsequent thereto, and all installments of taxes beginning with the installment due in May, 1945. Such final draft, when executed, would have merged the original offer and acceptance. If the appellant had voluntarily signed and delivered the final form of contract to the corporation, or had she acquiesced in the judgment as rendered below, the original purchaser would have been relieved of all liability.

The allegations of each paragraph of complaint that the appellant knew that a corporation was being formed for the purpose of performing the terms of said agreement, falls far short of alleging that she had ever consented to a transfer of the appellee Fuller's liability under this contract or that he should not sign and execute the final draft.

This offer and acceptance contemplated and created a liability on the part of Fuller. By this purported

assignment he attempted not only to assign his rights in the contract, but to transfer his liability thereunder to the corporation; this he could not do. Without the consent of the adversary party, rights which are coupled with liabilities under a contract cannot be assigned in such a way that the assignor no longer remains liable. 4 Am. Jur., Assignments, § 5, p. 233; *Kritz* v. *Moon* (1928), 88 Ind. App. 5, 163 N. E. 112; *Nelson* v. *Reidelbach, Exr.* (1918), 68 Ind. App. 19, 119 N. E. 804; *Sims* v. *Cordele Ice Co.* (1903), 119 Ga. 597, 46 S. E. 841; *Menger* v. *Ward* (1895), 87 Tex. 622, 30 S. W. 853; *Hounchin* v. *Salyards* (1911), 155 Iowa 608, 133 N. W. 48; *Tifton T. & G., Ry. Co.* v. *Bedgood* (1903), 116 Ga. 945, 43 S. E. 257; *Rice* v. *Gibbs* (1894), 40 Neb. 264, 58 N. W. 724. It has been said that "A party cannot be forced to accept of a contract not of his own choosing in the first instance, and his right of choice in this regard is not impaired by any substitute agreement to which he does not yield an intelligent subsequent assent." *D. C. Hardy Implement Co.* v. *South Bend Iron Works* (1895), 129 Mo. 222, 31 S. W. 599. See also *Arkansas Valley Smelting Company* v. *Belding Mining Co.* (1888), 127 U. S. 379, 8 S. Ct. 1308, 32 L. Ed. 246, wherein it is stated "Everyone has a right to select and determine with whom he will contract and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit, and substance of the party with whom you contract.' " We approve what was said in *Crane Ice Cream Co.* v. *Terminal Freezing & Heating Co.* (1925), 147 Md. 588, 128 Atl. 280, that "Anyone . . . who owes money cannot by any act of his own, or by any act in agreement with any other person than his creditor or the one to whom his performance is due, cast off his own liability and

substitute another's liability. If this were not true, obligors could free themselves of their own obligations by the simple expedient of assigning them."

It would seem to us that a more accurate description of what was attempted in the present case was an offer of novation wherein the so-called assignor was attempting to obtain a discharge from further liability. Such an offer may always be refused. 2 *Williston on Contracts,* § 420, (Revised Edition).

For the reasons heretofore given, it is our opinion that by the so-called assignment on which the appellee corporation must rely, it did not acquire the right to sue either for specific performance or for damages for the breach of contract.

Judgment reversed and cause remanded with instructions to sustain the demurrer to each paragraph of the complaint.

NOTE.—Reported in 90 N. E. 2d 128.