**LAMBERT INCORPORATED, Plaintiff-Appellant,**

**v.**

**STARBRAND SALES CORP., et al.,
Defendants-Appellees.**

**No. 17654.**

United States Court of Appeals
Seventh Circuit.

Jan. 30, 1970.

Anton Dimitroff, Indianapolis, Ind., for appellant, Barnes, Hickam, Pantzer & Boyd, Indianapolis, Ind., of counsel.

W. T. Laswell, John P. Tobin, Indianapolis, Ind., Willis Hickam, Spencer, Ind., John J. Thomas, Brazil, Ind., for appellees.

Before MAJOR, Senior Circuit Judge, and CUMMINGS and KERNER, Circuit Judges.

MAJOR, Senior Circuit Judge.

Appellant Lambert Incorporated (Lambert) states the contested issues presented on this appeal and makes a statement of facts. Appellees Will J. Alexander and Laura A. Alexander (the Alexanders), and Anton Pittl and Karolina Pittl (the Pittls) [1], agree with the contested issues as stated by Lambert, as well as with its statement of facts, which we adopt.

The contested issues are (1) whether the district court erred in holding that a state court judgment rescinding a land contract at the request of the vendor is binding on the mortgagee-assignee of the vendee in a federal court diversity action brought by the mortgagee-assignee, when the mortgagee-assignee acquired its interest prior to the commencement of the state court action and was not made a party thereto, and (2) whether the district court erred in holding that the mortgagee-assignee of the

---

1. Of the numerous defendants in the court below, the Alexanders and the Pittls are the only ones who have appealed. They will sometimes be referred to as the defendants.

vendee under a land contract has no interest subject to foreclosure (the assignment being for security only) because of a non-assignment provision in the contract, when the vendor is assured of receiving everything to which he is entitled and the mortgagee-assignee has tendered payment in full to the vendor in accordance with a prepayment provision in the contract.

Lambert's complaint in this diversity action arose from an indebtedness due it from Starbrand Sales Corp., Walter D. Bassett and Sarah Jane Bassett (the Bassetts). Counts I, II and III of the complaint joined only these three parties as defendants and sought money judgments against them with respect to this indebtedness. A default judgment was entered against them on these three counts. This aspect of the district court proceeding is not involved on this appeal; it sets the framework for the present dispute between Lambert on the one hand and the Alexanders and Pittls on the other. Defendants claim the exclusive rights to the Bassetts' equity interest in the land in question. This is the subject matter of Counts IV and V of Lambert's complaint.

As security for their indebtedness to Lambert, the Bassetts mortgaged and assigned to it their interest as vendees under two land contracts, one with the Alexanders and the other with the Pittls as vendors. Motions for summary judgment were filed by the Alexanders and the Pittls, which were allowed, and Lambert filed cross-motions for summary judgment, which were denied. From the judgment entered thereon Lambert appeals.

The motions of the Alexanders and the Pittls were both based on *res judicata,* that is, that state court judgments rescinding the land contracts in their behalf were conclusive determinations binding upon Lambert. Relevant to this issue are the following dates:

October 27, 1965—
Bassetts executed mortgage to Lambert.

February 15, 1966—
Mortgage recorded in Owen County.

July 28, 1966—
Bassetts executed assignment for security, in furtherance of mortgage, to Lambert.

August 5, 1966—
Assignment for security recorded in Owen County.

September 27, 1966—
Lambert's complaint in this action filed.

September 29, 1966—
Lis pendens of this action filed in Owen Circuit Court.

October 17, 1966—
Pittls and Alexanders enter their appearances by counsel in this action.

November 7, 1966—
Pittls and Alexanders filed rescission actions in Owen Circuit Court.

Thus, Lambert's asserted interest in the land was acquired prior to the commencement of the state court rescission actions. Moreover, such state court actions were filed after Lambert filed its complaint in the instant action.

Relevant to the non-assignment provision, the Alexanders' contract provided:

"2. Bassett is given and granted the privilege of prepaying any part or all of the balance of said purchase price hereunder at any time with interest to that date only.

\* \* \* \* \* \*

"6. This contract shall not be assigned by Bassett \* \* \*."

The Pittls' contract contained provisions sufficiently similar that they need not be repeated.

Lambert, pursuant to the prepayment provisions of the land contracts, tendered payment in full to the Alexanders and the Pittls.

Lambert argues that a judgment rendered against a mortgagor, or one similarly situated, does not bind the mortgagee, or one similarly situated, when the mortgagee's interest was acquired

prior to the commencement of the action resulting in the judgment and when the mortgagee was not a party to that action.

■ Under Indiana law a vendee in a land contract has an equitable interest which can be mortgaged. Burkam v. Burk, 96 Ind. 270, 273. Also it has been held in Indiana that an assignment for security is in the nature of a mortgage. In support of its argument on this facet of the case, Lambert relies almost exclusively upon Chase National Bank v. City of Norwalk, 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894, wherein it was held that a state court decree rendered in an action to which the mortgagee was not a party was not binding upon it in a federal court. In so doing the court stated (page 438, 54 S.Ct. page 478):

> "But, under well settled principles of jurisdiction, governing all courts, a decree against a mortgagor with respect to property does not bind a mortgagee whose interest was acquired before the commencement of the suit, unless he was made a party to the proceedings. Old Colony Trust Co. v. Omaha, 230 U.S. 100, 122, 33 S.Ct. 967, 57 L.Ed. 1410. For in every case where a mortgage was given before the litigation against the mortgagor was instituted, the mortgagee is entitled to have a decision determining his rights rendered on the basis of the facts and considerations adduced by him."

In the case before us, Lambert acquired an interest in the land prior to the commencement of the state court actions which resulted in judgments rescinding the land contracts. Lambert was not made a party to those actions. That the Bassetts intended to give Lambert an interest in the nature of a mortgage is evident from the assignment for security which recites that the Bassetts had previously given Lambert a mortgage on the land and that the assignment for security was given in furtherance of the mortgage. Moreover, in Norwalk, the court rejected the contention that the mortgagee was not entitled to relief because it had failed to allege or prove that it did not have knowledge of the proceeding in the state court or that it could not have intervened therein as mortgagee and asserted there the claims which it later made in the federal court. The court stated (page 441, 54 S.Ct. page 479):

> "The law does not impose upon any person absolutely entitled to a hearing the burden of voluntary intervention in a suit to which he is a stranger. Whether under the Ohio practice it would have been possible for the trustee to intervene, we have no occasion to determine. Unless duly summoned to appear in a legal proceeding, a person not a privy may rest assured that a judgment recovered therein will not affect his legal rights."

Defendants attempt to distinguish Norwalk on the basis that a different factual situation was involved in that case. They point out that it involved parties with unique characteristics, i. e., a bank, a utility, and a municipal corporation, and that the action there was for injunctive relief while in the instant case it is for foreclosure. We think that the unequivocal principles of law pronounced in Norwalk cannot be ignored because of the different factual situation. Notwithstanding the rather complicated factual situation in Norwalk, there clearly emerges the fact that the issue for decision was whether a mortgagee was bound by a decree against its mortgagor in the state court proceeding to which it was not a party.

■ Defendants would have us apply the law of *res judicata* on the theory that Lambert was in privity with the Bassetts and, therefore, bound by the state court decree. While the Supreme Court in Norwalk did not expressly so state, it is implicit in its reasoning that there was no privity between the mortgagee and mortgagor in that case. We think there was no privity in the instant case. On this point defendants confuse the issue and label this an action for specific performance, based on the premise that the Bassetts gave Lambert an outright as-

signment. Whether the parties would have been in privity under such circumstances we need not decide because, as noted, no outright assignment was given. The assignment was only as security for an indebtedness previously secured by a mortgage.

At this point we note that in Counts IV and V of the complaint the relief prayed for was that the court enter a decree foreclosing plaintiff's mortgage or security interest against the Bassetts; that the court determine the interest of the Alexanders and the Pittls, and that the property be sold by the marshal of the district court in accordance with its decree.

■ On the basis of the decision in Norwalk, we hold that the state court decree rendered in a proceeding to which Lambert was not a party was not binding on it and that it was entitled to invoke the jurisdiction of the district court in the instant suit.

■ While the record is not clear, it appears that the summary judgment in favor of the defendants was allowed on the basis of the *res judicata* issue. Even so, the parties have here briefed and argued the issue which involves the effect, if any, to be given to the non-assignment provisions of the land contracts, and we shall proceed to dispose of that issue. In this connection it is pertinent to keep in mind that Lambert tendered to the Alexanders and the Pittls the amounts owing them under such contracts.

Defendants argue that under Indiana law the assignments by the Bassetts to Lambert were null and void. In support of this argument they cite Thompson v. Allen, 1859, 12 Ind. 539; Elliott v. Lewallen, 1849, 1 Ind. 534, and Navin v. New Colonial Hotel, Inc. et al., 1950, 228 Ind. 128, 90 N.E.2d 128. None of these cases supports the rule that an assignment is void where either the assignor or assignee tenders payment in full to the vendor, as was done in the instant case.

Lambert on brief in effect concedes that absent a tender of payment an assignment by the vendee is void. It argues, however, that the rule is otherwise where a tender of payment has been made either by the assignor (vendee) or the assignee. A case on an analogous factual situation is Cheney v. Bilby, 8 Cir., 74 F. 52, page 64, cert. den. 164 U.S. 705, 17 S.Ct. 992, 41 L.Ed. 1180, wherein the court reasoned:

"This provision of the contract was obviously intended to prevent the assignment of the same, while it was executory to persons who might not be able or well disposed to faithfully execute it. It was a provision which was inserted in the agreement to enable Cheney, the vendor, to control the selection of an assignee thereof so long as the agreement remained in part unperformed, or so long as he was interested in the choice of an assignee who had the requisite means and ability to do what remained to be done. Inasmuch, then, as the provision in question was only intended to secure the faithful performance of the agreement by the purchaser or his assignee, it would be both unreasonable and inequitable to hold that Cheney, the vendor, is privileged to take advantage of the provision, to avoid performance on his part, after the entire amount of the purchase money has been promptly paid or tendered. We must assume, whatever may be the fact in this regard, that the provision against assigning the contract without the vendor's consent, was inserted therein for an honest and legitimate purpose; that is to say, for the purpose of securing the punctual payment of the purchase money, and a full compliance with other executory agreements, either by the original purchaser or by his assignee. Therefore, when it appears that that object has been accomplished, that the purchase money has been promptly paid or tendered to the vendor, and that nothing remains to be done but to execute a deed to the purchaser, the vendor cannot be heard

to allege, as an excuse for not making a conveyance, that at a certain time the purchaser of the land assigned the contract of purchase without his consent."

The *Cheney* rule has been summarized at 138 A.L.R. 205, 211, as follows:

"The majority of the cases take the view that the fact that the assignment of a land contract is made in violation or disregard of a provision thereof that the vendee shall not assign, or that he shall not assign without the vendor's written consent, or that an assignment made without the vendor's consent shall not be valid, does not preclude the assignee from maintaining a suit to compel specific performance, if the contract has been fully performed by the vendee and assignee or either of them, or if the assignee offers and is able to complete the performance. The theory adopted by the courts which so rule is that the stipulation against assignment is ordinarily to be construed as intended merely to safeguard performance on the part of the vendee, so that when full performance has been rendered, or is presently offered, the stipulation becomes of no further consequence."

The rule thus stated was quoted with approval by the Supreme Court of North Dakota in Gunsch v. Gunsch, 71 N.W.2d 623. In Socony Mobile Oil Co. v. Continental Oil Co., 335 F.2d 438, 442 (CA–10), the court cited Cheney in support of the statement:

"The authority cited by Mobil correctly states the rule that a covenant not to assign is valid so long as the contract is executory, but when all that remains to be done is the payment, the reason for nonassignability no longer exists."

Navin v. New Colonial Hotel, Inc. et al., *supra*, most relied upon by defendant, furnishes no support for their contention as to the Indiana rule; in fact, it is more favorable to Lambert's contention. Defendants on brief quote from that opinion as follows:

" * * * A party cannot be forced to accept of a contract not of his own choosing in the first instance, and his right of choice in this regard is not impaired by any substitute agreement to which he does not yield an intelligent subsequent assent. D. C. Hardy Implement Co. v. South Bend Iron Works, 1895, 129 Mo. 222, 31 S.W. 599. See also Arkansas Valley Smelting Co. v. Belden Mining Co., 1888, 127 U.S. 379, 8 S.Ct. 1308, 32 L.Ed. 246, wherein it is stated 'Every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent * * *.' "

In the *Arkansas Valley Smelting Co.* case cited in the quotation, the Supreme Court recognized the general rule that an assignee of a vendee in a contract which contained a non-assignment provision acquired no rights. However, the court also recognized that there were exceptions to the rule. It stated (8 S.Ct. 1310):

"Cases of agreements to sell and deliver goods for a fixed price, payable in cash on delivery, in which the owner would receive the price at the time of parting with his property, nothing further would remain to be done by the purchaser, and the rights of the seller could not be affected by the question whether the price was paid by the person with whom he originally contracted or by an assignee."

Moreover, in *Navin* the assignee tendered only an $18,000 down payment on a total purchase price of $60,000. It was under those circumstances that the court held the vendee could not substitute another person for himself, thereby discharging his future payment obligations. In contrast, in the instant case Lambert tendered to the Alexanders and the Pittls payment in full, and they were entitled to nothing more.

We hold that the district court erred in the allowance of the motions by the Alexanders and the Pittls for summary judgments. We also hold that the court erred in its denial of Lambert's cross-

motions for summary judgments, that is, for the relief prayed for in its complaint.

The judgment appealed from is reversed and the cause remanded for such further proceedings as may be appropriate.