1. MARRIED WOMEN—POWER TO CONTRACT.

 A contract between a husband and wife and a third person, whereby the latter is to set out an orchard on land occupied by the former, the title to which is in another, and is to receive a share of the fruit for a term of years, is not binding upon the wife, although she afterwards acquire title to the land.

2. CONTRACTS—WHEN ASSIGNABLE.

 A contract between a nurseryman and a farmer, by the terms of which the former is to plant fruit trees on the latter's land, to prune and care for them, and to receive in payment half the fruit grown for a period of 10 years, is made in part consideration of the skill and honesty of the nurseryman, and, in the absence of a special provision in the contract, it cannot be assigned by him without the consent of the other party.

Error to Kent; Adsit, J. Submitted November 13, 1896. Decided December 18, 1896.

Trover by George M. Edison against Joseph Babka and Delia Babka. From a judgment for defendants on verdict directed by the court, plaintiff brings error. Affirmed.

*Henry J. Felker*, for appellant.

*Thompson & Temple*, for appellees.

LONG, C. J. This action was brought by the plaintiff as the assignee of a certain contract, which reads as follows:

"Memorandum of agreement made and entered into this 6th day of November, A. D. 1889, by and between Mrs. Dolly Orcutt and Joseph Babka and Delia Babka, his wife, of the township of Plainfield, county of Kent,

and State of Michigan, parties of the first part, and Chas. E. Knapp, of the township of Grand Rapids, county of Kent, and State of Michigan, party of the second part, witnesseth:

"That Chas. E. Knapp is to furnish enough peach trees to set out a certain piece of land, to the amount of 1,000 trees, more or less, in the spring of 1890 and 1891, and said Knapp is to be to one-half of the expense of setting said trees, and to fencing said lot with post and wire, on the farm known as the 'D. Orcutt Farm,' and described as follows: The southeast quarter of the northwest quarter of section No. 20, township eight (8) north, of range eleven (11) west, township of Plainfield, said land owned and occupied by said first parties. Said Chas. E. Knapp agrees to replace all trees that die or are killed by the hard winters for the first three years after setting, and one-half of all trees to be replaced there, and Joseph Babka is to pay for the other half. Now, therefore, in consideration of the premises, and for said trees furnished, and to be furnished, by the said Chas. E. Knapp, in reference thereto, the said Joseph Babka hereby agrees to plow and till the ground on which said trees are set for the first three years after setting, and to plant the land to corn or beans, and to care for the trees in a good and workmanlike manner, and said Babka is to have for his work all of said corn or beans; and the said Knapp is to prune said trees each year as much as in his judgment is needed, and after the first three years said Knapp is to pay for one-half of the work in said orchard, or do it himself each and every year thereafter, at a rate not to exceed $2.50 per day for man and team, and $1.25 for man; said work to be done in proper season, without doing harm to the trees, up to picking time. Then each party can gather and dispose of their part, or they may pick and market it together, as they may choose. And said Knapp is to have one-half of all peaches grown on all of said trees for the term of 10 years from the time of setting said trees. That first parties are to furnish said Knapp, free from all expense, all necessary facilities, in the nature of roads, etc., for the caring for said trees, and for ingress and egress in gathering, securing, and removing his part of said fruit grown. And it is hereby agreed that the provisions of

this agreement shall be binding on their heirs, executors, or administrators of the respective parties.

"Witness our hands and seals, this 15th day of November, A. D. 1889.

     "JOSEPH BÁBKA. [L. S.]
     "DELIA BABKA. [L. S.]
     "CHAS. E. KNAPP. [L. S.]

"In presence of
  "MICHAEL BABKA."

While the contract was drawn to be executed by all the parties, it was not executed by Mrs. Orcutt, who was at that time the owner of the premises to which the contract related. At the time it was executed, Joseph Babka and his wife, Delia, were living on the farm, and working it on shares. On the 11th of October, 1892, Dolly Orcutt deeded the premises to Delia Babka, and she and her husband still reside upon the premises.

It is admitted that the trees were planted in accordance with the terms of the contract, and were tended and kept pruned by Knapp until the year 1893, when he assigned his interest in it to D. B. Pond and George H. Burgett; and they, on the 22d of September, 1894, assigned their interest to the plaintiff in this case. Previous to this last assignment, it is claimed that some peaches had been grown upon the trees, a part of which Burgett and Pond claimed belonged to them under the terms of the contract; and they claimed that the peaches were taken and disposed of by the defendants, or one of them, before they assigned their contract to the plaintiff. In the assignment to the plaintiff, they assigned, in writing, any right of action they might have against the defendants, or either of them, for taking and disposing of the peaches.

This suit is in trover for the conversion of the peaches. On the trial, it was contended by counsel for defendants:

1. That the contract was not one which Mrs. Babka could make, as at that time she was a married woman, and the contract did not relate to her separate estate, the title to the farm being then in Mrs. Orcutt.

2. That the contract was a personal one with Mr. Knapp, and that Babka had a right to rely upon the benefit he would derive from the personal knowledge of Knapp in the fruit business, his skill in trimming trees, and his honesty, as, by the terms of the contract, Knapp had the right to enter the orchard at any time, and remove the fruit.

On the trial, the court directed a verdict in favor of the defendants.

We think counsel are right upon both propositions. The contract was one which was not within the power of Mrs. Babka to make, and by which she could be bound. It had no reference to her separate estate. *Naylor* v. *Minock*, 96 Mich. 182, 186. We think, also, that it was a contract which could not be assigned without the consent of Babka, so that he would be bound to accept the services of a third party; and no showing was made or offered to be made that he ever assented to the assignment of it. Babka had the right to the benefit of Knapp's knowledge as a fruit-tree man, and it is plain that, by the terms of the contract, he did rely upon his knowledge, not only in the planting of the trees, but in the pruning from year to year during the whole 10 years covered by the contract. It is held in such cases that, where the contract is such as to imply peculiar confidence in the honesty, pecuniary ability, knowledge, or skill of the person to whom a guaranty is addressed, there is good reason for holding it to be strictly personal, unless its language implies the contrary. *King* v. *Batterson*, 13 R. I. 120. In the notes to *Sloan* v. *Williams*, 12 L. R. A. 496 (138 Ill. 43), this whole subject is fully discussed, and the rule stated in *King* v. *Batterson, supra,* upheld.

The judgment below must be affirmed.

The other Justices concurred.