CALVERT ET AL. *v.* MYERS ET AL.

[No. 11,483.   Filed January 5, 1923.]

LANDLORD AND TENANT.—*Lease.—Construction.—Agreement by Third Party to Pay Rent from Crops.—Lessee's Liability.—* Where a lease contained an absolute promise on the part of lessees to pay rent in a stipulated amount for the use of land, but there was a provision that lessees had entered into a contract with a third person, requiring him to furnish seed and to buy the entire crop and deduct from the purchase price, before delivery of the balance thereof to lessees, the sum specified in the lease as rent, and to pay the amount so deducted to the lessor, "if there be that amount due or if not that amount then he will pay," the lessor the balance due lessees, *held* that the lease contract did not amount to an agreement that lessees were only to pay rent from the proceeds of the sale of the crop, but they were liable for rent, though the crop was a failure and the amount due for rent could not be deducted from the proceeds of the sale of the crop.

From St. Joseph Circuit Court; *Chester E. Montgomery,* Judge.

Action by Albert Myers and others against William B. Calvert and another. From a judgment for plaintiffs, the defendants appeal. *Affirmed.*

*Anderson, Parker, Crabill & Crumpacker,* for appellants.

*Eli F. Seebirt* and *Daniel D. Schurtz,* for appellee.

NICHOLS, C. J.—Action by appellees against appellants to recover rent for certain land leased to appellants.

There was judgment for appellees in the sum of $228, from which, after appellants' motion for a new trial was overruled, they appeal, assigning as error the court's

action in overruling their demurrer to the complaint, in sustaining appellees' demurrer to their second, third, fourth and fifth paragraphs of answer, respectively, and in overruling their motion for a new trial. These rulings all in different form, present the same question, to wit: the correct interpretation of the rental contract involved.

It appears that appellants on the one hand, and appellees McHenry and Heckman on the other, were each claiming the real estate involved, and that a suit was pending to try and determine their respective claims. That it was to their mutual advantage that such real estate should be rented during the pendency of the suit. They therefore agreed—"to appoint a disinterested person to act as trustee for them pending said suit to rent said land to collect the rents therefor and apply the same, less legitimate expenses incurred in the payment of taxes and any assessments, which may become due while he is such trustee, and they therefore now nominate and designate as such trustee, Albert Myers, 411 South Main street, who is hereby empowered to act for and in their stead in the rental of said land and the collection of rents therefor and to make and enter into contracts with persons either for cash or upon the shares and out of the proceeds of such rent pay the taxes and other assessments which may come due while he is such trustee and to render an account of his doings in the premises when such suit shall have been finally determined."

Said trustee, being appellee Myers herein, in the performance of his duties as such trustee, entered into a contract of rental with appellants whereby he leased the real estate to them, and they took possession thereof, and held the same during the rental period, but have failed and refused to pay the rental of $228, claiming that under the lease contract they are not liable there-

for. The suit pending between appellants and appellees Heckman and McHenry to try title has been determined in favor of said appellees. The lease contract was executed by said trustee, by appellants, and by one Russ as a third party thereto. After the trustee's covenant of leasing, so much of the contract as we need to consider is as follows: "And the said parties of the second part (appellants) in consideration of the lease of the said premises by the said party of the first part (trustee) to them, does covenant and agree with the said party of the first part to pay him as rent for said premises the sum of $228, waiving all benefit of valuation and appraisement laws. And whereas, the parties of the second part and the party of the third part (Russ) have entered into a separate written contract whereby the above-described land is to be planted in hemp and the party of the third part has agreed to supply and furnish seed to the parties of the second part for the planting of said land, and by said written contract the party of the third part further agrees to furnish the harvesting machine for cutting said hemp, all of which is to be done at certain prices fixed in said contract. And it is further agreed therein that the party of the third part shall buy all hemp raised on said land from the parties of the second part, and from the purchase price thereof, he shall deduct the cost of said seed and the rental for said harvesting machine. And it is further agreed that after the said third party has made said deductions from the purchase price of said hemp, that before he delivers the balance of said price to the parties of the second part, he will deduct the sum of $228 from said sums due second parties (if there be that amount due or if not that amount then he will pay to said Myers the balance due the second parties) and shall pay the same to the party of the first part as the rent for the above described land."

The crop of hemp mentioned was a total failure, and appellants, interpreting the lease contract to mean that they were only to pay rent from the proceeds of the sale of the hemp raised, contend that there is nothing due from them. But we do not so construe the contract. It contains an absolute promise on the part of appellants to pay the trustee $228 for the use of the land, and the fact that there was a provision following, obligating a third party, with whom appellants had theretofore contracted to plant the land in hemp, to apply the proceeds of the sale of the crop to the payment of the rent, does not modify this positive agreement. Authorities cited by appellants pertain to the construction of ambiguous and uncertain contracts, but as we view this contract it is not so ambiguous or uncertain in its terms as to require parol evidence to arrive at its true meaning, certainly not when the purpose of such evidence is to contradict a positive agreement of the writing. While it is the law that parol evidence may be heard for the purpose of interpreting an otherwise ambiguous contract, if possible the written agreement must be considered as containing the agreement of the parties, and as furnishing better evidence of the intention of the parties than any that can be supplied by parol. *Warner* v. *Marshall* (1905), 166 Ind. 88, 75 N. E. 582.

It will be observed that the words, "if there be that amount due or if not that amount then he will pay to said Myers the balance due second parties," are parenthetical.

Century Dictionary defines a parenthesis as being: "An explanatory or qualifying clause, sentence or paragraph, inserted in another sentence, or in course of a longer passage, without being grammatically connected with it." The Encyclopediac Dictionary: "A sentence or part of a sentence inserted in the middle of another sentence, with the subject of which it is cognate, but

from which it may be omitted without impairing the grammatical construction or the substantial meaning." *Early* v. *Wilkinson & Hunt* (1852), 9 Gratt. (Va.) 68, 72;—"A sentence so enclosed in another sentence as that it may be taken out without injuring the sense of that which encloses it." If we adopt appellants' contention that appellee Myers was to receive in full for his rent only the amount due appellants, if any, we must grammatically connect the parenthetical words with what follows. Omitting these words, which we may do without impairing the grammatical construction or substantial meaning, Russ, the third party, was obligated to pay the $228 *so deducted* to Myers. Of course if nothing could be deducted, there was no obligation to pay. The parenthetical words only help in understanding the obligation assumed by Russ. Appellants say by their answers that these words were inserted subsequent to the time of the original preparation of the lease for their protection, but these averments are clearly contradictory of the purpose of the insertion as appears on the face of the instrument. Their purpose was to protect Russ from paying to Myers more than he had in his hands for appellants. Appellants cite *Knepper* v. *Eggiman* (1912), 177 Ind. 56, 97 N. E. 161, and other authorities, sustaining the rule that various instruments drawn at the same time and having relation to the same subject-matter will be construed together for the purpose of showing the true contract between the parties. Conceding that the rule has application here, we are confirmed in the conclusion that we have reached. Appellants knew the terms of the agreement making Myers trustee to rent the property, being parties thereto. There was nothing in that agreement indicating that the land was to be rented to appellants, or that it was to be rented for a hemp crop. The trustee was only authorized to rent for a share of the crop, or for cash, and he

had no authority to make a lease in which the payment of the rent should be contingent upon a hemp crop being raised. We must not assume that appellants intended to make a contract with Myers in violation of his trust. Judgment affirmed.